UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 6:22-cr- 78 - WWB-EJK
18 U.S.C. § 371

TERESA MCINTYRE

## INFORMATION

The United States Attorney charges:

## COUNT ONE
**(Conspiracy to Bribe a Public Official, Submission of a False Claim,
Theft of Government Property, and Wire Fraud)**

### A. Introduction

At times relevant to this Information:

1.      The Small Business Administration (SBA) was an agency of the United States.

2.      The SBA Conspirator was a "public official" as defined by 18 U.S.C. § 201(a)(1).  In or about May 2020, the SBA Conspirator began working for the U.S. Government as an SBA Loan Specialist.  As an SBA Loan Specialist, the SBA Conspirator was responsible for processing home and business loans; making recommendations on collateral needed to secure loans; applying accepted financial procedures to analyze financial resources to determine an applicant's ability to repay requested loans; reviewing all pertinent facts needed to make eligibility determinations by analyzing such factors as the nature and cause of damage, intended use of proceeds,

legislative and administrative loan limits, and disposition of insurance and other recoveries; ensuring loan files contain all pertinent documentation, to include conversations with applicants and written recommendations or justifications for conclusions; processing loan applications on web-based computer system; and responding orally and in writing to applicants or their representatives. Because of COVID-19, the SBA authorized the SBA Conspirator to work from that employee's residence located in the Middle District of Florida.

3.     In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. In conjunction with an officially declared disaster by the United States Government, the CARES Act allowed for the SBA to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic. To qualify, a business had to be in operation prior to February 1, 2020.

4.     Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort. The application included a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

5.     The application process involved filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to the date of the disaster (January 31, 2020). This information

2

furnished by the applicant was then used by SBA application evaluation systems to calculate the principal amount of money the small business was eligible to receive in the form of an EIDL.

6.      In addition to applying for an EIDL, an applicant could request and then receive up to $10,000 in an EIDL Cash Advance Grant based on the number of employees claimed.  The EIDL Cash Advance Grant was disbursed in amounts of $1,000 per claimed employee.  Any EIDL Cash Advance Grant funding that was received by an applicant based on the number of claimed employees did not need to be repaid to the SBA if the loan application was ultimately denied by the SBA, or if the applicant declined the EIDL that was offered by the SBA at a later date.

7.      Pursuant to the provisions governing the EIDL program, loan proceeds had to be used by that business on certain permissible expenses.  The EIDL (working capital) loans had to be used by the afflicted business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

8.      To evaluate EIDL applications, the SBA computer system used automation and system programming to quickly conduct checks of each application submitted by each applicant.  The SBA computer system performed checks of the applicant's credit worthiness and evaluated other elements of data furnished by the applicant to identify duplicative applications and indicators of fraudulent activity.  The SBA computer system also utilized the information furnished by the applicant to determine the dollar amount of the loan offer that the applicant may be extended,

3

which included gross revenues in the 12-month period prior to the disaster, costs of goods sold during that same timespan, and loss of rental income. If any aspect of the application did not pass the automated evaluation within the SBA computer system, the application's progress was stopped, and an electronic notification was sent to the applicant regarding the potential cause for the application to be halted. The applicant was then given the opportunity to engage with the SBA and request reconsideration of the application.

9.     The loan application evaluation system also was designed so that SBA employees, to include SBA Loan Specialists, could affect applications and manually change and override the system's actions if appropriate and necessary.

10.     TERESA MCINTYRE was a resident of the Middle District of Florida.

### B. Conspiracy

11.     Beginning at a time unknown to the Grand Jury, but beginning at least by in or about June 2020, and continuing thereafter through and including in or about October 2020, in the Middle District of Florida, and elsewhere, the defendant,

### TERESA MCINTYRE,

did knowingly and willfully combine, conspire, confederate, and agree with the SBA Conspirator, and others known and unknown to the Grand Jury:

a.     To commit bribery, in violation of 18 U.S.C. § 201(b)(2)(B);

b.     To commit the crime of submitting a false, fictitious, and fraudulent claim, in violation of 18 U.S.C. § 287;

4

c. To commit theft of government property, in violation of 18 U.S.C. § 641; and,

d. To commit wire fraud, in violation of 18 U.S.C. § 1343.

### C. **Manner and Means**

12. The manner and means of the conspiracy included the following:

a. It was part of the conspiracy that the SBA Conspirator, TERESA MCINTYRE, and other co-conspirators known and unknown to the United States Attorney would and did unlawfully devise and execute a scheme and artifice to defraud the SBA of money and property by means of materially false and fraudulent pretenses, representations and promises.

b. It was a further part of the conspiracy that the SBA Conspirator TERESA MCINTYRE, and other co-conspirators known and unknown to the United States Attorney would and did obtain money, and attempt to obtain money, from the SBA through submission of false applications for EIDLs.

c. It was a further part of the conspiracy that the SBA Conspirator TERESA MCINTYRE, and other co-conspirators known and unknown to the United States Attorney would and did prepare and submit applications for EIDLs for businesses that contained false and fraudulent pretenses, representations and promises that related to material facts, including, but not limited to, the following:

(1) False claims that the businesses were in operation prior to February 2020;

5

(2)     False claims as to the revenues that the businesses had earned during the 12-month period prior to the date of the disaster; and,

(3)     False claims as to the number of employees employed by the businesses.

d.      It was a further part of the conspiracy that conspirators known and unknown to the United States Attorney would and did give, offer, and promise to pay money to the SBA Conspirator for that employee's assistance in preparing the applications for EIDLs for their companies and processing their EIDLs.

e.      It was a further part of the conspiracy that the SBA Conspirator would and did demand, seek, receive, accept, and agree to receive and accept money from conspirators known and unknown to the United States Attorney to pay her for her assistance in obtaining approval of their applications for EIDLs.

f.      It was a further part of the conspiracy that the SBA Conspirator, TERESA MCINTYRE, and other co-conspirators known and unknown to the United States Attorney would and did falsely represent that applicants for EIDLs had not agreed to pay any fees to anyone for assistance in completing the application.

g.      It was a further part of the conspiracy that the SBA Conspirator would and did use that employee's access to the SBA's computer systems to manipulate the status of EIDLs to trigger the system to extend funding, and in some cases to approve funding, for EIDLs submitted for the benefit for applicants whose applications for EIDLs had been submitted by the SBA Conspirator or TERESA MCINTYRE.

h.    It was a further part of the conspiracy that the SBA Conspirator TERESA MCINTYRE, and other co-conspirators known and unknown to the Grand Jury would and did use interstate wires in furtherance of the conspiracy and scheme and artifice to defraud, including by submitting applications for EIDLs to the SBA, by using interstate wires to receive emails from the SBA, and by using interstate wires to send emails to each other.

i.    It was a further part of the conspiracy that the SBA Conspirator, TERESA MCINTYRE, and other co-conspirators known and unknown to the Grand Jury would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

## D.  Overt Acts

13.    In furtherance of and to affect the objectives of the conspiracy, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a.    On or about July 6, 2020, in the Middle District of Florida, TERESA MCINTYRE submitted an application for an EIDL for R.C.S. that falsely represented its gross revenues for the 12 months prior to the date of the disaster were $350,000 and that it had no cost of goods sold.

b.    On or about July 16, 2020, in the Middle District of Florida, the SBA conspirator approved the EIDL for R.C.S.

c.     On or about an unknown date, but on or after July 16, 2020, the owner of R.C.S. paid $2,000 to the conspirator who had introduced him to the SBA conspirator and TERESA MCINTYRE, a portion of which was then paid to the SBA conspirator and TERESA MCINTYRE.

d.     On or about August 4, 2020, in the Middle District of Florida, TERESA MCINTYRE emailed the co-conspirator at the co-conspirator's SBA.gov email account on behalf of a company with the initials of B.T.: "SBA, Original bank information was incorrectly given in error (personal account). Attached is the correct bank information. Other applications in attempt to correct the error should be disregarded. Thank you for working with us."

e.     On or about August 17, 2020, in the Middle District of Florida, TERESA MCINTYRE submitted an application for an EIDL for H.S.I. that falsely represented its gross revenues for the 12 months prior to the date of the disaster were $2,792,500 and that it had no cost of goods sold.

f.     On or about August 17, 2020, in the Middle District of Florida, TERESA MCINTYRE submitted an application for an EIDL for P.M.G. that falsely represented its gross revenues for the 12 months prior to the date of the disaster were $819,751 and that it had no cost of goods sold.

g.     On or about September 30, 2020, in the Middle District of Florida, TERESA MCINTYRE emailed the co-conspirator that she was working on a series of applications that had not been approved, including those of G.G.P., M.H.S., M.H.G, T.V., S.G.S., and E.B.

h.      On or about September 30, 2020, in the Middle District of Florida, in an effort to stop other SBA employees from thwarting the efforts of the co-conspirator and TERESA MCINTYRE to get the EIDL applications of G.G.P., M.H.S., M.H.G, T.V., S.G.S., and E.B. approved, the co-conspirator advised other SBA employees: "RECTIVATION FILE – STAY OFF MY LAWN **********
MODIFICATION REQUEST BEING PROCESSED PLEASE 'DO NOT' WORK ON THIS FILE, YOU WILL BE DUPLICATING OUR WORK THE FILE WILL MOVE FROM YOUR QUEUE SHORTLY THANK YOU[.]"

i.      On or about October 3, 2020, the co-conspirator texted TERESA MCINTYRE: "I have your list of applicants that need attention. I will create cases for them on Monday and Tuesday, send you the official document requests and get them processed and approved I hope within the next two weeks[.]"

j.      On or about October 5, 2020, the co-conspirator texted TERESA MCINTYRE: "Started loading your cases to my recon folder will finish today and get the doc request emails remarries[.]"

All in violation of 18 U.S.C. § 371.

**FORFEITURE**

1.      The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.      Upon conviction of a conspiracy to violate 18 U.S.C. §§ 201, 641, and/or 1343, all in violation of 18 U.S.C. § 371, the defendant,

**TERESA MCINTYRE,**

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.      If any of the property described above, as a result of any act or omission of the defendant:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 18 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

ROGER B. HANDBERG
United States Attorney

By: _____
Amanda Daniels
Assistant United States Attorney

By: _____
Chauncey Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

11