AF Approval _Blw for SN_                    Chief Approval _C B, for RBH_

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA

    v.                                    CASE NO. 6:22-cr-78-WWB-EJK

TERESA MCINTYRE

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, TERESA MCINTYRE, and the attorney for the defendant, Alan Diamond, Esquire, mutually agree as follows:

**A.**    **Particularized Terms**

    1.    <u>Count Pleading To</u>

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiracy to commit an offense against the United States, in violation of 18 U.S.C. § 371.

    2.    <u>Maximum Penalties</u>

Count One carries a maximum sentence of 5 years imprisonment, a fine of not more than $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of no more than 3 years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the

Defendant's Initials _____

offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

| | |
|---|---|
| First: | Two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
| Second: | The defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Information; and |
| Fourth: | The overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy. |

4.    Indictment Waiver

Defendant will waive the right to be charged by way of Indictment before a federal grand jury.

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials _____                    2

6.    <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the Small Business Administration.

7.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.   The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).   The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.   Role in Offense

The United States recommends to the Court that the defendant receive a two-level downward adjustment, pursuant to USSG §3B1.2, regarding the defendant's role in the offense. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10.   Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands

Defendant's Initials _____   4

that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

      11.    <u>Cooperation - Substantial Assistance to be Considered</u>

      Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands

Defendant's Initials _____        5

that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

12.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

13.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full,

Defendant's Initials _____                    6

complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

Defendant's Initials _____     7

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

14.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges

Defendant's Initials _____                    8

(including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.   The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The

Defendant's Initials _____                    9

defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon

Defendant's Initials _____          10

defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.    Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District

Defendant's Initials _____        11

Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.     Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.     Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.     Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Defendant's Initials _____        12

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.   The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

Defendant's Initials _____        13

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States

Defendant's Initials _____                    14

Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from her waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

      8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

      9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

      10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of

Defendant's Initials _____     15

any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the

attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____        17

13.     <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this _____ day of May, 2022.

ROGER B. HANDBERG
United States Attorney

_____
TERESA MCINTYRE
Defendant

_____
Amanda Daniels
Assistant United States Attorney

_____
Alan Diamond, Esquire
Attorney for Defendant

_____
Chauncey Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

_____
Roger B. Handberg
United States Attorney

Defendant's Initials _____          18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-

TERESA MCINTYRE

## PERSONALIZATION OF ELEMENTS

First:     Did two or more persons in some way agree to try to accomplish
           a shared and unlawful plan?

Second:    Did you know the unlawful purpose of the plan and willfully join
           in it?

Third:     During the conspiracy, did one of the conspirators knowingly
           engage in at least one overt act as described in the Information?

Fourth:    Was the overt act committed at or about the time alleged and with
           the purpose of carrying out or accomplishing some object of the
           conspiracy?

Defendant's Initials         19

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 6:22-cr-

TERESA MCINTYRE

## FACTUAL BASIS

Beginning in or about June 2020 and continuing through and including in or about October 2020, TERESA MCINTYRE and her co-conspirator conspired to (1) commit bribery, in violation of 18 U.S.C. § 201, (2) knowingly submit a false, fictitious, and fraudulent claim, to any department and agency of the United States, in violation of 18 U.S.C. § 287, (3) commit theft of government property, in violation of 18 U.S.C. § 641, and (4) commit wire fraud, in violation of 18 U.S.C. § 1343.

### Overview of the Economic Injury Disaster Loan Process

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. In conjunction with an officially declared disaster by the United States Government, the CARES Act allowed for the Small Business Administration (SBA), an agency of the United States, to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic. To qualify, a business had to be in operation prior to February 1, 2020.

Defendant's Initials _____                    20

Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort.   The application included a jurat-like paragraph where the applicant affirmed that the information submitted was true and correct under the penalty of perjury and applicable criminal statutes.

The application process involved filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to the date of the disaster (January 31, 2020).   This information furnished by the applicant was then used by SBA application evaluation systems to calculate the principal amount of money the small business was eligible to receive in the form of an EIDL.

In addition to applying for an EIDL, an applicant could request and then receive up to $10,000 in an EIDL Cash Advance Grant based on the number of employees claimed.   The EIDL Cash Advance Grant was disbursed in amounts of $1,000 per claimed employee.   Any EIDL Cash Advance Grant funding that was received by an applicant based on the number of claimed employees did not need to be repaid to the SBA if the loan application was ultimately denied by the SBA, or if the applicant declined the EIDL that was offered by the SBA at a later date.

Pursuant to the provisions governing the EIDL program, loan proceeds had to be used by that business on certain permissible expenses.   The EIDL (working capital) loans had to be used by the afflicted business to pay fixed debts, payroll, accounts

Defendant's Initials _____                    21

payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

To evaluate EIDL applications, the SBA computer system used automation and system programming to quickly conduct checks of each application submitted by each applicant.   The SBA computer system performed checks of the applicant's credit worthiness and evaluated other elements of data furnished by the applicant to identify duplicative applications and indicators of fraudulent activity.   The SBA computer system also utilized the information furnished by the applicant to determine the dollar amount of the loan offer that the applicant may be extended, which included gross revenues in the 12-month period prior to the disaster, costs of goods sold during that same timespan, and loss of rental income.   If any aspect of the application did not pass the automated evaluation within the SBA computer system, the application's progress was stopped, and an electronic notification was sent to the applicant regarding the potential cause for the application to be halted.   The applicant was then given the opportunity to engage with the SBA and request reconsideration of the application. The loan application evaluation system also was designed so that SBA employees, to include SBA Loan Specialists, could affect applications and manually change and override the system's actions if appropriate and necessary.

### Overview of Co-Conspirator

MCINTYRE'S co-conspirator conspired with MCINTYRE and others to submit false applications for EIDLs and to receive bribes paid to the co-conspirator by recipients of fraudulently obtained EIDLs in return for being influenced in the

Defendant's Initials _____                    22

performance of an official act and for being influenced to allow or make an opportunity for the commission of a fraud on the United States through the preparation and submission of fraudulent EIDL applications to the SBA.

At all times relevant to this case, the co-conspirator was a resident of the Middle District of Florida and a "public official" as defined by 18 U.S.C. § 201(a)(1).   In or about May 2020, the co-conspirator began working for the U.S. Government as an SBA Loan Specialist. As an SBA Loan Specialist, the co-conspirator was responsible for processing loan applications and business loans on a web-based computer system; reviewing pertinent facts needed to make eligibility determinations; analyzing such factors as the nature and cause of the damage stemming from the declared disaster; identifying the intended use of SBA proceeds; identifying loan limits; determining the disposition of insurance and other recoveries that may be a duplication of benefits; assessing credit worthiness; conducting verification of business ownership; investigating and evaluating credit history to determine credit worthiness of the applicant business, related affiliates, and principal owners of the applicant business; applying accepted financial procedures to analyze financial resources to determine whether the applicant can repay the requested loan from sources of cash flow; comparing the size of the loan request to the applicant's available income and assets to determine comparative financial ratio analysis; analyzing established business operations, local economic circumstances and known management capabilities; documenting reasons for decisions to recommend approval or disapproval of the sought after loan; ensuring the loan file contained documentation of all pertinent facts,

Defendant's Initials _____               23

conversations with loan applicants, and reasons for each conclusion or recommendation; reviewing and screening applications received for completeness and accuracy before processing and taking corrective actions as necessary and appropriate; and responding to inquiries from applicants, their representatives, agents, etc., concerning the status of applications and reasons for agency decisions. Because of COVID-19, the SBA authorized the co-conspirator to work from the co-conspirator's residence located in the Middle District of Florida.

For the EIDLs discussed in this summary, the SBA did not assign the co-conspirator to work on any of them, and the co-conspirator never notified the SBA that the co-conspirator was involved in any aspect of handling those loans.   The co-conspirator was not authorized to use the SBA computer system for any of the loans referenced in this summary.

The server used by the SBA to process EIDL applications is located outside of Florida.

### Overview of TERESA MCINTYRE

MCINTYRE's role in the conspiracy and scheme was to prepare fraudulent EIDL applications and to coordinate with the co-conspirator in getting those EIDLs approved by the SBA.

### H.S.M. and P.M. EIDL Applications

The co-conspirator decided to illegally profit from her position at the SBA by using it to facilitate the approval of loans that never should have been approved.

Defendant's Initials _____        24

MCINTYRE acted at the co-conspirator's direction and was someone who the SBA had no reason to suspect was acting in concert with the co-conspirator.

As she was advised by the co-conspirator, MCINTYRE knew that there were two primary factors that set the loan amount that an applicant could receive for an EIDL: gross revenues and cost of goods sold. By inflating gross revenues or by understating the cost of goods sold, MCINTYRE knew that applicants would have an increased likelihood of receiving the maximum EIDL of $150,000. MCINTYRE also knew that applicants would be more willing to reward the co-conspirator and MCINTYRE through the payment of fees and the referral of other applicants if they developed a reputation for being able to obtain large EIDLs successfully.

To achieve that goal, MCINTYRE fabricated gross revenues and cost of goods sold on applications that she prepared. For example, on or about August 17, 2020, in the Middle District of Florida, MCINTYRE submitted an EIDL application to the SBA that she had prepared for a company with the initials H.S.I. In that application, MCINTYRE represented that H.S.I.'s gross revenues for the 12 months prior to the disaster was $2,792,500 and that there was no cost of goods sold. The owner of the business has been interviewed and has advised that the information contained in the EIDL application was false. In particular, the owner has advised that he never provided MCINTYRE with the amount of revenues or cost of goods sold for the business and that the amounts that were provided were false (*i.e.,* the revenues were inflated and the cost of goods was understated). A review of emails provided by the

Defendant's Initials _____   25

owner of the business shows that the owner did not provide MCINTYRE with any documentation for the business that would have supported those numbers.

MCINTYRE's fraudulent application resulted in the SBA providing the maximum EIDL of $150,000 to the business.   The owner of the business paid $2,500 to the person who had introduced him to the co-conspirator and MCINTYRE.   That person paid the co-conspirator and MCINTYRE some of those funds for their role in obtaining the fraudulent EIDL.

MCINTYRE prepared a second fraudulent loan application for the owner of the business.   That business was a company with the initials P.M.G. On or about August 17, 2020, in the Middle District of Florida, MCINTYRE prepared an application for P.M.G., and submitted it to the SBA, that represented that the gross revenues for the 12 months prior to the disaster was $819,751 and that there was no cost of goods sold.   The owner of the business has advised that the information contained in the EIDL application was false, because the business did not make those revenues, and it did have cost of goods sold.   A review of emails provided by the owner of the business shows that the owner did not provide MCINTYRE with any documentation for the business that would have supported those numbers.

MCINTYRE's fraud was discovered during the application review process. The SBA requested a recent tax return from P.M.G.   The owner provided the 2018 return, which showed that the business had $232,185 in gross sales for 2018 (as opposed to over $819,000 for 2019).   The return also reflected that the principal business activity was investments.   MCINTYRE knew that the business was involved in real estate

Defendant's Initials _____   26

investing, because she provided the owner of the business with a draft EIDL application that reflected that fact (and which also left blank the estimated loss for the business). Rather than include that information in the EIDL application, MCINTYRE falsely represented that the business activity was "real estate." MCINTYRE did that, because she knew that real estate investment was not a permissible business activity for purposes of obtaining an EIDL. The SBA, however, discovered the true purpose of the business by communicating with the owner of the business. As a result, the SBA was able to deny the EIDL application.

Other EIDL applicants have been interviewed by federal agents and have advised that the financial information included in the applications prepared by the co-conspirator and MCINTYRE was fabricated. In many of those cases, the result of using the fabricated financial information was to allow applicants to receive the maximum loan of $150,000 (or close to that amount), which were amounts that they would not have received had the co-conspirator and MCINTYRE provided accurate information.

### T.E. and Related EIDL Applications

One of the roles that the co-conspirator performed during the conspiracy was to try to use her position to manipulate the SBA into approving fraudulent EIDL applications and to overcome any internal efforts by the SBA to identify and deny the fraudulent loans submitted by the co-conspirator and MCINTYRE. One example involves a company with the initials T.E. and other applications submitted by one of the owners of that business.

Defendant's Initials _____     27

On or about May 6, 2020, one of the owners of the business submitted an EIDL application for T.E.   The application reflected that the business had gross revenues of over $886 million and cost of goods sold of over $323 million.    The application reflected that the business had three owners, each of whom owned 33%.

During the application process, in the same pattern that was seen with many of the loans involving the co-conspirator and MCINTYRE, the co-conspirator used her position to resolve a fraud alert that the SBA had detected with the EIDL application. On or about June 23, 2020, the co-conspirator requested an "unfreeze" of the application, claiming that the "[f]raud alert is not related to this application – does not match on addresses or socials."   Four days later, the loan was obligated, and the loan agreement was executed on July 1, 2020.

On or about July 24, 2020, and July 25, 2020, MCINTYRE prepared six EIDL applications for businesses that were claimed to belong to one of the three owners of T.E.    For each of the applications, the businesses were the recent recipients of Employer Identification Numbers and were identified as being a general partnership. Each application represented that the business had multiple employees and large amounts of gross revenue.    The owner was identified as one of the owners of T.E. The owner's ownership percentage, however, was listed as 0%. MCINTYRE was listed as the preparer for each EIDL application.   She falsely omitted that she and the co-conspirator expected to be paid a fee upon the disbursement of proceeds to the applicant.

The following chart provides some details about these EIDL applications:

Defendant's Initials _____        28

| Date of application | Date of EIN | Applicant | Gross Revenues | Cost of Goods Sold |
|---|---|---|---|---|
| July 24, 2020 | June 30, 2020 | M.O. | $616,603 | $234,309 |
| July 25, 2020 | June 30, 2020 | G.G.O | $6,502,276 | $2,470,864 |
| July 25, 2020 | June 30, 2020 | M.H.S. | $418,602 | $159,069 |
| July 25, 2020 | July 8, 2020 | M.H.G. | $631,227 | $239,866 |
| July 25, 2020 | July 17, 2020 | E.B. | $414,010 | $157,320 |
| July 25, 2020 | July 20, 2020 | S.G.S. | $197,424 | $75,021 |

The SBA approved the EIDL for M.O. It did not approve any of the others. Three of the applicants (M.H.S., M.H.G., and S.G.S.) were immediately flagged as being "unqualified" because they did "meet eligibility criteria." The other three were not approved either (MCINTYRE agrees to these facts, but states that she only remembers the EIDLs for G.G.O and E.B.).

According to the notes in the SBA records, MCINTYRE called the SBA for an update and was advised of the unqualified status of M.H.S. MCINTYRE advised that the application would request reconsideration.

No such reconsideration was requested at that time. Instead, SBA records reflect that SBA employees identified certain fraudulent aspects of the applications:

Defendant's Initials _____    29

| Date | Application | Action |
|---|---|---|
| August 17, 2020 | M.H.G | Comment added that "please verify business validity, applicant listed business entity is general partnership with 0% ownership" |
| August 17, 2020 | S.G.S. | Comment added that "Hello LO, This app seems like fraud. Note that there is 0% ownership. I only looked at one related deal (M[.H.G.] – 3311839901) and there are 8 employees with same address as principal residence. Same 0% ownership. Please review all related seven deals and explain in Notes regarding your findings. Thanks." |

The co-conspirator was not assigned to work on any of these loans. Despite that fact, and despite the fact that the co-conspirator and MCINTYRE were going to get paid for any successful applications, the co-conspirator took official action on all of them.

The co-conspirator coordinated her actions with MCINTYRE. On or about August 23, 2020, the co-conspirator directed MCINTYRE "[T.E.] is good to go ... you need to enter [T.V.]" T.V. was the name of another related business for which MCINTYRE was going to prepare and submit an EIDL application. As she had been directed by the co-conspirator, on or about August 23, 2020, MCINTYRE prepared and submitted an application for T.V. In the application, MCINTYRE represented that the business had $429,685 in gross revenues and $163,280 in cost of goods sold. MCINTYRE listed the same person as being the owner of this business (along with a 0% ownership share). MCINTYRE listed herself as the preparer for the EIDL

Defendant's Initials_____      30

application.   Once again, she falsely omitted that she and the co-conspirator expected to be paid a fee upon disbursement of their proceeds to the borrower.

As was the case with three of the other EIDL applicants, the application for T.V. was immediately flagged as being as being "unqualified" because it did not "meet eligibility criteria."   At this point, the co-conspirator used her position to take the following official actions in an attempt to override the SBA system to get the SBA to approve the loans that had been flagged as being ineligible:

| Date | Application | Action |
|------|-------------|--------|
| August 23, 2020, at 8:03 a.m. | M.H.S. | Comment added that "Application System Unqualified Error – Reactivation Recommended – Process Per Guidelines[.] All Conditions and documents are uploaded – Approval is Suggested" |
| August 23, 2020, at 8:03 a.m. | G.G.P. | Comment added that "Application System Unqualified Error – Reactivation Recommended – Process Per Guidelines[.] All Conditions and documents are uploaded – Approval is Suggested" |
| August 23, 2020, at 8:08 a.m. | E.B. | Comment added that "Application System Unqualified Error – Reactivation Recommended – Process Per Guidelines[.] All Conditions and documents are uploaded – Approval is Suggested" |
| August 23, 2020, at 5:45 p.m. | T.V. | Comment added that "Fraud Alert is not associated with this application or social" |

The co-conspirator's efforts were not successful.  SBA employees continued to identify suspected fraud. For example, with respect to the application for M.H.S., SBA employees wrote the following in the notes:

- "Called client to address the following: Fraud Alert[,] Client information failed validation[,] Fraud on related deal(s)[.] The connection was bad, client will respond to email but I informed that I will also need to validate his id."

Defendant's Initials                     31

- "Deal is being unqualified due to the following reason(s): (1) Does not meet eligibility criteria"

- "The application is ineligible and hence declined."

- "suspicious online behavior – Decline"

- "Applicant has excuses for bank account that someone stole his check book so he closed his bank account[.] He provided form 8879-c saying this is a tax return and the way the form is completed has suspicious characters. It is not a tax return but a form that authorizes the Internal Revenue Service to accept a personal identification number. See DMS for email correspondence and uploaded documents. Fraud suspected. Declining application

- "not sure why this is up for approval-client failed validation- applicant did not provide ID (as requested) , no ssn card in docs many of the previous notes - recommend decline. I recommend a DECLINE –"

The co-conspirator was not deterred by any of the conclusions reached by these four SBA employees. On or about September 30, 2020, MCINTYRE emailed the co-conspirator that she was working on a series of applications that had not been approved, including those of G.G.P., M.H.S., M.H.G, T.V., S.G.S., and E.B. On that same date, in an effort to stop other SBA employees from thwarting their efforts to get those EIDL applications approved, the co-conspirator advised other SBA employees:

> RECTIVATION FILE – STAY OFF MY LAWN
> ********* MODIFICATION REQUEST BEING PROCESSED PLEASE "DO NOT" WORK ON THIS FILE, YOU WILL BE DUPLICATING OUR WORK THE FILE WILL MOVE FROM YOUR QUEUE SHORTLY THANK YOU

On or about October 3, 2020, the co-conspirator texted MCINTYRE:

> I have your list of applicants that need attention. I will create cases for them on Monday and Tuesday, send you the official document requests and get them processed and approved I hope within the next two weeks[.]

Defendant's Initials                  32

MCINTYRE texted back: "Yay!! That's great news…." On or about October 5, 2020, the co-conspirator texted MCINTYRE: "Started loading your cases to my recon folder will finish today and get the doc request emails remarries[.]" The only reason why that did not happen was that a federal search warrant was executed at the co-conspirator's residence on October 15, 2020.

As noted above, the co-conspirator was never assigned any of these applications. The co-conspirator statement that she would get them "processed and approved" was based on her experience of using her position to approve fraudulent applications that had been prepared by MCINTYRE. One such example involved the application of a business with the initials R.C.S. The owner of R.C.S. has been interviewed by federal agents and has advised that he never provide any historical information about the revenues or costs for the business for the EIDL application and that the gross revenue ($350,000) figure included in the application was a fictitious number. MCINTYRE prepared the application and submitted it on July 6, 2020, and the co-conspirator approved it on July 16, 2020. Through their actions, the co-conspirator and MCINTYRE caused the SBA to authorize and pay out an EIDL, totaling approximately $150,000, that was based upon false information. The owner of the business paid $2,000 to the person who had introduced him to the co-conspirator and MCINTYRE. That person paid the co-conspirator and MCINTYRE some of those funds for their role in obtaining the fraudulent EIDL.

One essential aspect of the conspiracy was concealing the co-conspirator's involvement. MCINTYRE was the person who was able to accomplish that by being the name listed as a preparer on EIDL applications. The co-conspirator and MCINTYRE took that step, because they knew that their scheme would be discovered if the co-conspirator was identified on the EIDL applications.

The co-conspirator and MCINTYRE concealed the true nature of their relationship when they would interact with each other in emails that were sent or received by the co-conspirator's official government email account. In those emails, the co-conspirator and MCINTYRE would act as if they had no relationship other than their interaction on that particular EIDL, and they never disclosed in any of those emails that they were working together to get the EIDL application approved so that they could profit from it. By way of example, on or about August 4, 2020, MCINTYRE emailed the co-conspirator at the co-conspirator's SBA.gov email account on behalf of a company with the initials of B.T.: "SBA, Original bank information was incorrectly given in error (personal account). Attached is the correct bank information. Other applications in attempt to correct the error should be disregarded. Thank you for working with us." This was scripted by the co-conspirator and MCINTYRE to create the false impression that they had no relationship other than their interaction on that EIDL and that MCINTYRE did not know who she was emailing (by using the generic reference of "SBA").

For their role in devising and executing the scheme, the co-conspirator and MCINTYRE were paid for each successful funding of an EIDL, usually $1,000 for

Defendant's Initials _____        34

each EIDL. MCINTYRE omitted from each EIDL application she prepared that she and her co-conspirator were going to receive a fee for preparing the application and that the fee was contingent on successful funding of an EIDL, which, as MCINTYRE knew, was not permitted according to the terms of the EIDLs. Some of the false applications for EIDLs that were part of the conspiracy include those for J.G. and N.D., which resulted in the payments of funds from SBA that were based upon false representations. The amount of proceeds received by the SBA Conspirator, MCINTYRE, and another conspirator for the EIDLs identified in this Plea Agreement is approximately $10,800.

Defendant's Initials _____        35